UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL JASON REECE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV0833 AGF |
| | ) | |
| ERNEST JACKSON, CORRECTIONAL | ) | |
| MEDICAL SERVICES, WANDA | ) | |
| LARAMORE, and DONNA ADAMS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on Defendants' renewed motion for summary judgment. Oral argument on this motion was held on the record on May 19, 2008. For the reasons set forth below, the motion shall be granted as to Defendant Donna Adams and denied as to the remaining Defendants.

## BACKGROUND

This case involves a Missouri inmate's claim that the 18-month delay in providing him with lower dentures after extracting all of his lower teeth manifested a deliberate indifference to his serious medical needs, in violation of his constitutional rights. In his initial pro se complaint, Plaintiff sought damages for pain and suffering against the Missouri Department of Corrections ("MDOC"); South Central Correctional Center ("SCCC"), one of the prisons where he was incarcerated during the relevant time

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

period; and Earnest Jackson, D.M.S., the dentist in charge of dental care at MDOC as an employee of Correctional Medical Services ("CMS") with whom MDOC had contracted for the provision of dental services to MDOC inmates.

MDOC and the prison were dismissed on the ground that they were not proper parties. On November 28, 2006, the Court denied Dr. Jackson's motion for summary judgment, and appointed counsel to represent Plaintiff. On March 6, 2007, Plaintiff filed an amended complaint adding as new Defendants CMS and two additional CMS employees: Wanda Laramore, the Health Services Administrator at SCCC, and Donna Adams, the intake nurse at another MDOC facility to which Plaintiff was transferred from SCCC during the relevant time period. Plaintiff sought actual and punitive damages.

The facts established by the record are as follows. When Plaintiff entered MDOC, he had full upper dentures and all his lower teeth needed to be extracted. Plaintiff's lower teeth were extracted on December 11, 2003. On December 18, 2003, Plaintiff's sutures were removed and the treating dentist noted that Plaintiff should be scheduled for a fitting for dentures. (Pl.'s Ex. 1 to Doc. #76.) Plaintiff submitted several Medical Services Requests ("MSR") beginning on April 30, 2004, requesting that he be fitted for his lower dentures. On June 28, 2004, he filed an Informal Resolution Request ("IRR"), in which he stated that he had been waiting to be fitted for his lower dentures since December (2003) and had filed several MSRs "for this to be done." (Doc. #72-18.)

The record indicates that Plaintiff had an appointment for medical care at SCCC scheduled on July 13, 2004, but the record does not establish whether this was related to dental care. Plaintiff did not keep the appointment because on July 6, 2004, he was

2

transferred to a different facility, at which Adams was the intake nurse. Plaintiff testified in his deposition taken on December 5, 2007, that he told the intake nurse that he had been waiting to get his lower dentures for a long time. (Defs.' Ex. A to Doc. #72 at 78.) Adams did not recall Plaintiff noting any dental problems at the time of intake. (Doc. #72-9, at 62.) It is undisputed that Adams did not note any complaints regarding dentures on the intake form, and this was her sole contact with Plaintiff.

A staff note dated August 2, 2004, on Plaintiff's IRR form states that "Dental" at the new facility was notified about the matter on July 8, 2004, but that "[t]hey do not have a dentist there so [Plaintiff] will be put on a list." (Doc. #72-18.) On August 19, 2004, Plaintiff filed an inmate Grievance, stating that he wanted the matter investigated and that the failure to provide him his lower dentures for so long was cruel and unusual punishment. Id. On November 12, 2004, Laramore responded to Plaintiff's IRR and grievance, informing Plaintiff that she could not locate the MSRs which he had referenced in his IRR, nor any MSRs regarding his dentures filed since his transfer. She directed Plaintiff to "follow up" with the dentist at his new facility. (Defs. Ex. J to Doc. #72).

Plaintiff had an appointment on November 23, 2004, to start impressions for his lower dentures, but he missed this appointment because on the same day he got into a fight with another inmate and was taken to administrative segregation. He thereafter filed numerous additional MSRs for the dentures. In none of his MSRs did Plaintiff indicate that the lack of lower dentures was causing him any specific problems. Furthermore, at his deposition, Plaintiff acknowledged that when he saw prison health personnel for other

3

medical issues during the period in question, he did not complain about problems due to the lack of lower dentures.

Plaintiff filed a grievance appeal on January 21, 2005, to which Jackson responded as follows on February 4, 2005: "In order for your denture to be fabricated, please submit a MSR so that your treatment can be initiated." (Doc. #72-11.) On June 21, 2005, impressions for Plaintiff's lower dentures were started. Plaintiff was not able to keep an appointment for a fitting on August 22, 2005. On August 31, 2005, he had his final fitting. Defendants have offered the deposition testimony of a non-defendant dentist that in private practice anyone who wants lower dentures gets them about six months after extractions, but some patients find the dentures uncomfortable and do not use them. (Doc. #72-18 at 59-60.)

Jackson testified by deposition that he considered the need for dentures to be a matter of routine dental care and that inmates needing dentures would be placed on a list to be fitted for them, but that emergency dental issues, such as conditions causing pain, would take priority. (Doc. #72-17 at 73-75, 94.) Laramore testified in her deposition that CMS received "a large number" (up to about 100 per day) of MSRs from inmates and that one or two a week were misdirected and/or lost. (Doc. #72-12 at 74-75).

In his deposition, Plaintiff was asked whether the lack of lower dentures caused problems other than to his appearance and ability to eat some foods. He responded that he had choked on his food a few times, but he acknowledged that he never needed medical attention for these incidents. (Ex. A to Doc. #72 at 92-94.)

Defendants argue that they are entitled to summary judgment because the record

is void of any complaints or suggestion that Plaintiff sustained any collateral medical problems as a result of not having lower dentures for the period of time involved in this case. Thus, according to Defendants, Plaintiff has not established that he had a serious medical need that was not attended to, as required for an Eighth Amendment violation.[2]

---

[2] In opposition to the motion for summary judgment, Plaintiff has submitted his affidavit dated April 10, 2008, attesting that when attempting to chew food after his lower teeth were removed and before he received his lower dentures, the upper denture would come down on his lower gums causing the lower gums to be tender and sore and at times leaving "scrapes" on his lower gums; and that this tenderness and soreness made it even more difficult at times to eat food supplied by the prison, and caused him to choke on many foods and to skip many meals altogether. He also attested that attempting to chew foods without lower dentures also caused pain and soreness in his jaw. (Pl.'s Ex. A to Doc. #76.)

Defendants filed a motion to strike this affidavit on the ground that it is untimely and contradicts Plaintiff's earlier deposition testimony noted above. Defendants also ask the Court to strike Plaintiff's supplemental interrogatory answer that he spent approximately $1,000 on food he had to buy because he could not eat the food provided by the prisons. Again, Defendants maintain that this answer is late and that it is not supported by the record.

As Defendants argue, generally at the summary judgment stage, a court should not consider a post-deposition affidavit that contradicts the affiant's earlier deposition testimony. See Popoalii v. Corr. Med. Servs., 512 F.3d 488, 498 (8th Cir. 2008), 512 at 498. Such an affidavit may be considered, though, when it provides non-contradictory supplemental information. See Brannon v. Luco Mop Co., 521 F.3d 843, 847 (8th Cir. 2008) (holding that the district court did not abuse its discretion in failing to strike a party's affidavit where the affidavit appeared to "clarify and not contradict" the party's prior deposition testimony). While the information in the affidavit may be viewed as contradicting the deposition, neither the substance of the affidavit nor the supplemental answer to interrogatories is relevant to Defendants' liability, as Plaintiff concedes that he never told prison officials or CMS employees about problems caused by the lack of dentures.

5

## DISCUSSION

The standards for summary judgment and for a constitutional claim by a prisoner for inadequate medical care are set forth in the Court's Memorandum and Order of November 28, 2007. Briefly, summary judgment is appropriate if the record, when viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Popoalii, 512 F.3d at 499. To survive summary judgment on a constitutional claim of inadequate medical treatment, a state prisoner must show "'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). On the other hand, the Eighth Amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care . . . ." Farmer v. Brennan, 511 U.S. 825, 832 (1994).

A claim by a prisoner of inadequate medical care must satisfy both an objective and a subjective test. Hudson v. McMillian, 503 U.S. 1, 5 (1992). The objective prong asks whether the harm inflicted is sufficiently serious to warrant Eighth Amendment protection. Id. at 8-9. This test is contextually driven and is responsive to "contemporary standards of decency." Id. at 8. "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Jones v. Minn.

Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008) (citation omitted). The subjective prong asks whether the officials acted with a sufficiently culpable state of mind, one rising to "deliberate indifference." The inmate "'must show more than negligence, more even than gross negligence.'" Estate of Rosenber v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). An intent to harm, however, need not be shown. Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001). Deliberate indifference may be manifested by prison officials intentionally delaying access to medical care. Maloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) (citation omitted).

The Court first concludes, that while Plaintiff's condition may not have required immediate attention, a triable question of fact is present as to whether not having lower dentures for the length of time involved here constituted a serious medical need on these facts, even without specific proof that the delay in providing the dentures resulted in other serious medical needs, such as bleeding gums or infections. See Maclary v. Allen, No. Civ. A. 04-65-JJF, 2005 WL 2978610, at *2 (D. Del. Nov. 7, 2005) (holding that lack of dentures for over a year was a condition which a layperson would easily recognize as needing a dentist's attention, and was thus a serious medical need; furthermore, the prisoner alleged that he was unable to chew his food, significantly hindering his ability to eat and therefore the lack of dentures "could be expected to lead to substantial and unnecessary suffering and is thus a serious medical need."); Gasaway v. Dist. of Columbia, No. Civ. A. 94-2689 PLF, 1996 WL 225699, at *2 (D.D.C. Apr. 29, 1996) (holding that having no upper teeth and only six lower teeth for 14 months before being provided by the prison with dentures that had been prescribed constituted a serious

7

medical need); Dean v. Coughlin, No. 06-13657, 623 F. Supp. 392, 401 (S.D.N.Y. 1985) (enjoining prison system to provide adequate care for prisoners' serious dental needs, including the provision of dentures in a timely fashion); but see Harter v. Davis, 2008 WL 786742, at *7 (E.D. Mich. Mar. 24, 2008) (granting prison officials summary judgment where medical records belied Plaintiff's claim that he suffered severe symptoms due to lack of dentures for approximately 18 months).

With regard to the second prong of the test, the Court concludes that the evidence, viewed in the light more favorable to Plaintiff, may establish that Defendant Adams's conduct was negligent, but it does not rise to the level of deliberate indifference. As such, Adams is entitled to summary judgment. See, e.g., Thorbes v. Bell, 180 Fed. App'x 603, 604 (8th Cir. 2006); Stetter v. Riddick, 6 Fed. App'x 522, 523 (8th Cir. 2001). The Court concludes, however, that the record establishes a jury question as to whether the conduct of Jackson and Laramore amounted to deliberate indifference to a serious medical need.

With regard to CMS's liability as an entity, Plaintiff must show that there was a policy, custom, or official action that inflicted an actionable injury. See Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); Moore v. Jackson, 123 F.3d 1082, 1087-88 (8th Cir. 1997). Plaintiff argues that there is sufficient evidence in the record from which a jury could conclude that CMS had a custom of mishandling and/or losing inmates' MSRs and that the mishandling of Plaintiff's MSR resulted in the delay involved in this case. The Court agrees. See Moore, 123 F.3d at 1088 (holding that the district court erred in granting summary judgment to CMS on the claim of an inmate, whose dental

needs were not timely met, that CMS had a custom or procedure of misplacing, ignoring, or destroying MSRs with resulting harm to the inmates).

Also before the Court is Plaintiff's motion for sanctions for Defendants' failure to produce in a timely fashion documents responsive to Plaintiff's discovery requests, specifically, the Health Services Procedures Manual for SSSC. All discovery has now been produced and although some of Defendants' discovery responses were indeed late, the Court discerns no prejudice to Plaintiff warranting the imposition of sanctions at this point in the proceedings.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** Defendants' motion for summary judgment is **GRANTED** as to Defendant Donna Adams and **DENIED** as to the remaining Defendants. [Doc. #70]

**IT IS FURTHER ORDERED** that Defendants' motion to strike Plaintiff's affidavit is **DENIED**. [Doc. #79]

**IT IS FURTHER ORDERED** that Plaintiff's motion for sanctions is **DENIED**. [Doc. #82]

**IT IS FURTHER ORDERED** that in light of the trial setting of **Monday, June 16, 2008, at 9:00 a.m.**, the Court shall extend the deadline for filing pre-trial materials to

and including **Friday, May 30, 2008**. A final pre-trial conference is set for **Thursday, June 12, 2008, at 2:00 p.m.**

                                                                _/s/ Audrey G. Fleissig_
                                                                AUDREY G. FLEISSIG
                                                                UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of May, 2006